## BRANDON v. MOORE.

1. HOMESTEAD: *Execution lien on under act of 1852.*

   The homestead act of 1852, which provides that a homestead shall be "exempt from sale on execution," suspended the sale while the property was occupied as a homestead, but did not prevent the levy of an execution during such occupancy; and such levy created a lien which, if not waived by laches on the part of the judgment creditor, could be enforced when the homestead right ceased.

2. SAME: *Same: Priority over lien of subsequent mortgage.*

   An execution was issued in January, 1872, and levied on lands then occupied as a homestead. The judgment debtor claimed the land as exempt and the circuit court reserved it from sale, and the debtor continued to occupy it until his death, in 1884, when, without unreasonable delay, the creditor sued out a writ of *venditioni exponas* under which the land was sold to the plaintiff. *Held:* That the sale passed the title to the land as against the defendant, who claims it by a purchase made under a mortgege executed by the judgment debtor subsequently to the levy of the execution.

APPEAL from *Lee* Circuit Court.

M. T. SANDERS, Circuit Judge.

*Tappan & Hornor*, and *McCulloch & McCulloch*, for appellants.

1. No lien by execution could attach to a homestead under the act of 1852. *Gould's Dig., p.* 504. The language is "exempt from sale *or* execution," &c. 22 *Ark.*, 400; 36 *Id.*, 545. The wording of the act precludes the idea of an intention to permit the execution lien to attach.

2. But if appellee acquired a lien by virtue of the levy of their execution, the same was displaced by lapse of time before the death of Brandon. More than twelve years had elapsed. 15 *Ark.*, 269; 18 *Id.*, 309; 23 *Id.*, 459; 2 *Bush*, 236; 31 *Id.*, 392; 40 *Id.*, 146.

The sale under the ven. ex. was void and conveyed no title, the lien, if any, having been lost by lapse of time.

*Palmer & Nichols*, for appellee.

1. The act of 1852 did not exempt a homestead from the lien of a judgment, or levy of an execution, *but only from*

*sale.* See difference in language of the act and constitution of 1868 and that of constitution of 1874. The first exempts *from sale,* the latter *from lien.*

The supersedeas in April, 1874, only restrained the *sale* of the land, and did not disturb the *lien.*

2. The levy was not lost by lapse of time, because up to the time of Brandon's death appellee was restrained from enforcing his lien, except during the eight days between the dissolution of the injunction and the issue of the supersedeas. 36 *Ark.,* 545.

COCKRILL, C. J. The appellees, who are plaintiffs in this action of ejectment to recover possession of the land in controversy, derive their title from a purchase at execution sale. The action was against the appellant, who was in possession by virtue of a purchase made at a trustee's sale under a mortgage with power to sell, executed by the judgment debtor, after the levy of plaintiffs' execution to secure a debt due to the appellant. The debt upon which the judgment was rendered was contracted when the homestead law of 1852 was in force. The judgment was rendered in October, 1871, and the execution was levied upon the lands in the following January. The judgment debtor, who was the head of a family and a citizen of this state, occupied the lands as his homestead at the time of the levy.

1. HOME-
STEAD:
Execu-
tion lien on
under act of
1852.

The appellant, who was the defendant below, argues that no lien could be created upon the homestead by the levy of an execution, and that there was, therefore, no lien on the land when his mortgage was executed. The argument is based chiefly upon the wording of the act, as shown by the printed copy in the *Acts of* 1852, *p.* 9, which is, that the homestead shall be " exempt from sale or execution;" and it is argued with much reason that the use of the disjunctive " or " between sale and execution manifests the intention to

prohibit the seizure as well as the sale of a homestead under execution. But an examination of the original act on file in the office of the secretary of state—the legal depository of such matters—relieves the question of doubt, for the language employed in the enactment is, that the homestead shall be "exempt from sale on execution." There is, therefore, nothing peculiar in the wording of the act to aid the appellant's cause.

In the case of *Chambers v. Sallee*, 29 *Ark.*, 412, this court, following *Norris v. Kidd*, 28 *Id.*, 485, where the exemption article in the constitution of 1868 was construed, held that the homestead act of 1852 suspended only the sale of the property occupied as a homestead, and left the creditor's rights of judgment and execution lien unaffected, and free to be made available by sale when the right of homestead ceased. It follows, then, that a lien was created upon the lands by the levy of the execution, whether the act of 1852 or the provisions of the constitution of 1868 governed; and the remaining question is, did it continue in force until the sale at which the appellees purchased? It is the duty of an execution creditor to follow up his levy and make it effective without unreasonable delay. There is no statute limiting the time within which the lien may be enforced, but laches on his part in executing his levy it has been frequently held, work a waiver of his lien. *Patterson v. Fowler*, 23 *Ark.*, 459, and cases cited. *Herman v. May*, 41 *Id.*, 146. Here no laches can be imputed to the plaintiffs in execution. The agreed statement of facts shows that before a sale could be had under the execution an injunction issued at the instance of the judgment debtor restraining the sale. The injunction was not finally dissolved until some time in the year 1874. Before a sale could take place thereafter the debtor filed his schedule, in accordance with the act then in force, claiming the land as his home-

stead. The plaintiff in execution resisted his homestead claim, but the circuit court sustained it, and reserved the land from sale by the statutory supersedeas. The lands were occupied as a homestead by the debtor until his death, in 1884, when, without unusual delay, the judgment creditors took the proper steps, as it is agreed, to revive the judgment in accordance with the practice indicated in *State Bank v. Etter*, 15 *Ark.*, 269, and *Barber v. Peay*, 31 *Id.*, 392; to entitle them to the writ of *venditioni exponas* to carry out their levy by sale.

**2. SAME:** *Same:* Priority over lien of subsequent mortgage. The sale was thus pushed with all the expedition in the power of the judgment creditors. An alias execution on a writ of vend. ex. would not have availed them earlier. *Euper v. Alkire*, 37 *Ark.*, 283. The sale to the appellees under the vend. ex. carried the title as against the administrator and heirs of the deceased debtor. *Barber v. Peay, sup.* The appellant is in no better attitude. *Hare v. Hall,* 41 *Ark.*, 372. He has not the merit of a purchaser without notice, even if that fact would be of any avail.

Affirm.